SLR:LDM:MH
F.#2012V01272

CV 12          5772

COGAN, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,                    VERIFIED COMPLAINT
                                             IN REM
                    Plaintiff,
                                             Civil Action No.
          - against -

THREE HUNDRED THOUSAND ONE HUNDRED
THIRTY DOLLARS AND NO CENTS
($300,130.00), MORE OR LESS,
IN UNITED STATES CURRENCY, AND
ALL PROCEEDS TRACEABLE THERETO,

                    Defendant In Rem.

- - - - - - - - - - - - - - - - -X

          Plaintiff, UNITED STATES OF AMERICA, by its attorney,

LORETTA E. LYNCH, United States Attorney for the Eastern District

of New York, Melanie D. Hendry, Assistant United States Attorney,

of counsel, alleges upon information and belief as follows:

                    **PRELIMINARY STATEMENT**

          1.   Plaintiff brings this action in rem in order to

condemn and to forfeit to the use and benefit of the United

States of America the above-captioned defendant in rem, three

hundred thousand one hundred thirty dollars and no cents

($300,130.00), more or less, in United States currency (the

"Defendant Funds"), which were seized from Romulo Olivos

("Olivos"), on or about March 9, 2012, in Staten Island, New

York.

          2.   The Defendant Funds are subject to forfeiture to

the United States in accordance with (a) 21 U.S.C. § 881(a)(6),
as moneys, negotiable instruments, securities, or other things of
value furnished or intended to be furnished by any person in
exchange for a controlled substance, or money used or intended to
be used to facilitate a controlled substance offense; and (b) 18
U.S.C. § 981(a)(1)(A), as property involved in money laundering
activity in violation of 18 U.S.C. §§ 1956 or 1957.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action,
pursuant to 28 U.S.C. §§ 1345 and 1355.

4.    Venue is proper pursuant to 28 U.S.C. §§ 1355 and
1395, in that the acts and omissions giving rise to the
forfeiture occurred in the Eastern District of New York and the
Defendant Funds were seized in the Eastern District of New York.

### STATUTORY BACKGROUND

5.    Pursuant to 21 U.S.C. § 881(a)(6), all moneys,
negotiable instruments, securities, or other things of value
furnished or intended to be furnished by any person in exchange
for a controlled substance or listed chemical in violation of
Title 21, Subchapter I of the United States Code, or proceeds
traceable to such an exchange, or money used or intended to be
used to facilitate a controlled substance offense, are subject to
forfeiture to the United States.

6.    Pursuant to 18 U.S.C. § 981(a)(1)(A), any

2

property, real or personal, which is involved in a transaction or attempted transaction in violation of federal money laundering laws, 18 U.S.C. §§ 1956 or 1957, and any property traceable thereto, is subject to forfeiture to the United States.

### MONEY LAUNDERING

7.    Narcotics traffickers amass large cash proceeds from the sale of narcotics in the United States.  The traffickers, or those associated with the traffickers, frequently attempt to give the impression of legitimacy to these profits; i.e., to "launder" them, by making the profits appear to have been generated by a legitimate source.  The traffickers must also devise various methods to remit those narcotics proceeds to suppliers of narcotics located in Colombia and other South American countries, which are known source locations of narcotics, without alerting governmental or law enforcement agencies in either country.

8.    In order to accomplish this goal, narcotics traffickers frequently utilize domestic and foreign banks and/or financial institutions in order both to make their narcotics profits appear to be from legitimate sources and to move those profits through the financial system into the countries where narcotics are produced.

9.    A popular method to launder narcotics proceeds is for narcotics traffickers, through a third party, to "sell" their

3

narcotics proceeds in the United States for pesos in Colombia.
This practice, commonly known as the Black Market Peso Exchange
("BMPE"), is centered on a BMPE broker who can bring the drug
dollars and the legitimate pesos together.

10. In a common BMPE scheme, a BMPE broker will
typically identify a South American businessperson, who imports
goods from places such as the United States, China or Panama.
The BMPE broker will generally offer the South American
businessperson an opportunity to pay the debt owed to the
exporter in the foreign country at a significant discount
compared to the cost of making the payment through a South
American bank. The South American business person who agrees to
this scheme will then turn over the payment for the imported
goods in the form of pesos to the BMPE broker who will
subsequently contact a Drug Trafficking Organization ("DTO").
When the BMPE broker contacts the DTO, the broker will offer the
pesos in South America in exchange for the narcotics proceeds
that are located in the United States.

11. The BMPE broker will then arrange to have the
narcotics proceeds picked up by a member of the BMPE broker's
organization. These money pick-ups will usually occur on a
street corner or parking lot between two people who have never
met before and will most likely never meet again. These pick-ups

4

frequently involve several hundred thousands of dollars in narcotics proceeds.

12.  Following a money pick-up, the BMPE broker arranges to forward those funds to the exporter in the United States to pay the debt of the South American businessperson. This can be accomplished by remitting those funds directly to the exporter, either through money orders or by depositing the narcotics proceeds directly into an account held by the exporter.

**FACTS**

13.  At approximately 9:45 a.m. on or about March 9, 2012, agents of the Drug Enforcement Administration (the "DEA"), observed Olivos leaving a residence located at 108-09 35th Avenue, Corona, Queens (the "35th Avenue Location") and walking to 36th Street in Corona, Queens.  There, agents observed Olivos talking to an individual identified as Sarita Acevedo ("Acevedo").  Olivos and Acevedo then entered a maroon Nissan Murano (the "Murano") registered to Acevedo.  Both Olivos and Acevedo then drove back to the 35th Avenue Location.  After arriving, agents observed Olivos enter the residence at the 35th Avenue Location and exit with a suitcase, before getting back into the Murano.

14.  Agents followed Olivos and Acevedo in the Murano as they drove over the Whitestone Bridge, the George Washington

Bridge, and into New Jersey before heading south on Interstate 95 towards Philadelphia, Pennsylvania.

15. At approximately 1:45 p.m., agents observed the Murano northbound on Interstate 95, before the vehicle proceeded into Staten Island, New York.

16. Agents initiated a traffic stop of the Murano, after observing the vehicle illegally cross into the High Occupancy Vehicle Lane of the Staten Island Expressway. When agents began to question Olivos, he stated that he only spoke Spanish. Acevedo stated that she was the owner of the Murano and gave conflicting statements about the purpose of their travel to Philadelphia.

17. Acevedo then indicated that the suitcase in the vehicle was hers and gave agents consent to search it. Upon opening the suitcase, agents discovered the Defendant Funds.

18. Upon further questioning by agents, Acevedo stated that she resided at 87 Stockholm Street in Brooklyn, New York. Acevedo indicated that Olivos had asked her to take a ride with him to Philadelphia and that she did not know that he had any money in the suitcase. Acevedo also revealed that the suitcase was picked up from an unidentified man at a hotel on Roosevelt Boulevard, which is located in the greater Northeast region of Philadelphia. Acevedo also stated that the Defendant Funds did not belong to her.

6

19.  Olivos was then questioned by agents with Acevedo translating.  Olivos stated that he had picked up the money at a hotel from an individual known to him as "Beto" at the direction of his brother, Christian, who had called from Peru and told him to do so.  Olivos indicated that he was planning to deposit the Defendant Funds into a bank account, and use the funds to buy computer products.

20.  Olivos further stated that he generally buys computer products and then sends them to American Cargo located in Miami, Florida, which is owned by his brother Christian. Olivos also indicated that the Defendant Funds did not belong to him, and that no taxes had been paid on the Defendant Funds.

21.  The Defendant Funds, totaling approximately $300,130.00, were seized in the following denominations: 1x$100's, 3x$50's, 13,785x$20's, 2,072x$10's, and 692x$5's.  The predominant number of $5, $10, and $20 bills is consistent with the transportation of street-level narcotics proceeds to higher-level drug suppliers.

22.  The pickup of the Defendant Funds from an unknown person at the direction of a third-party located abroad, for purported deposit into a domestic bank account, and for the purported purchase of computer products destined for export is consistent with the BMPE.

23.  On or about August 3, 2012, DEA served notice of the seizure of the Defendant Funds upon Olivos.

24.  On or about August 27, 2012, Olivos filed a claim to the Defendant Funds.  The matter was then referred to the United States Attorney's Office for the Eastern District of New York for initiation of this civil in rem action.

### FIRST CLAIM FOR RELIEF

25.  Plaintiff repeats the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26.  The Defendant Funds constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a controlled substance offense.

27.  As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States, in accordance with 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

28.  Plaintiff repeats the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

29.  The Defendant Funds constitute property involved in money laundering activity, in violation of 18 U.S.C. §§ 1956 and/or 1957.

8

30.   As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States, in accordance with 18 U.S.C. § 981(a)(1)(A).

**WHEREFORE**, plaintiff, United States of America, requests that a warrant of this Court be issued for the arrest of the Defendant Funds; that due notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and condemned to the use of the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and for such other relief and further relief as this Court deems just and proper.

Dated:      Brooklyn, New York
            November 21, 2012

                              LORETTA E. LYNCH
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              Attorney for Plaintiff
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

                    By:   _Melanie D. Hendry_
                              Melanie D. Hendry
                              Assistant U.S. Attorney
                              (718) 254-6040

9

## VERIFICATION

Patrick Griffee hereby declares as follows:

1.  I am a Special Agent with the U.S. Drug Enforcement Administration.

2.  I have read the within-verified complaint in rem and know the contents thereof.

3.  I believe the matters contained in the within-verified complaint in rem are true and accurate to the best of my knowledge, information and belief.

4.  The source of my information and the grounds for my belief are personal knowledge, information provided by other law enforcement officers, and the official files and records of the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:      Brooklyn, New York
            November 21, 2012

_____
Patrick Griffee
Special Agent
U.S. Drug Enforcement Administration